# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| SKYLIGHTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:15-cv-00043-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| DAVID BYRON; JENNIFER BYRON; CCSF | ) | |
| LLC; FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION; CITIMORTGAGE, INC.; | ) | |
| CLEAR RECON CORP as Trustee; DOES I | ) | |
| through X, inclusive; and ROE | ) | |
| CORPORATIONS I through X, inclusive, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| FEDERAL HOUSING FINANCE AGENCY, | ) | |
| as Conservator of the Federal National | ) | |
| Mortgage Association, | ) | |
| | ) | |
| Intervenor, | ) | |
| | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION; FEDERAL HOUSING | ) | |
| FINANCE AGENCY, as Conservator of the | ) | |
| Federal National Mortgage Association, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| SKYLIGHTS LLC; and THE FALLS AT | ) | |
| RHODES RANCH OWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Counter-Defendants. | ) | |
| | ) | |

Pending before the Court is the Joint Motion for Summary Judgment (ECF No. 26) filed by Defendant/Counter-Plaintiff Federal National Mortgage Association ("Fannie Mae") and

Intervenor/Counter-Plaintiff Federal Housing Finance Agency ("FHFA").  Counter-Defendant The Falls at Rhodes Ranch Owners Association (the "HOA") filed a Response in Opposition (ECF No. 31), and Plaintiff/Counter-Defendant Skylights LLC ("Skylights") also filed a Response in Opposition (ECF No. 32).  Fannie Mae and FHFA filed a Reply in Support (ECF No. 38).

# I.        **BACKGROUND**

This case arises out of a dispute between the parties over the effects of the HOA's foreclosure on their "super-priority" interest in real property under Nevada Revised Statutes § 116.3116, when a first priority loan secured by the foreclosed upon property is held by Fannie Mae or the Federal Home Loan Mortgage Corporation ("Freddie Mac").  The primary question at issue involves the interplay between Nevada Revised Statutes § 116.3116 and 12 U.S.C. § 4617, the latter of which provides certain protections for property held by Fannie Mae and Freddie Mac while under the conservatorship of FHFA.

## A.  Legal Background

### 1.  A homeowner association's super-priority in Nevada

Chapter 116 of Nevada Revised Statutes codifies Nevada's Uniform Common-Interest Ownership Act, and—with some exceptions—applies to all common-interest communities created in Nevada, including homeowner associations of unit owners organized under a properly recorded declaration. Nev. Rev. Stat. §§ 116.001, -.1201, -.2101, -.3101.  Under section 116.3116, a homeowner association has a lien on a unit for assessments levied against that unit. Nev. Rev. Stat. § 116.3116(1).  Nevada Revised Statutes § 116.3116(2) further provides that such homeowner association liens are prior to all other liens and encumbrances, subject to certain exceptions.

One exception to the homeowner association lien priority is for "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became

delinquent." Nev. Rev. Stat. § 116.3116(2)(b).  However, under the so-called "super-priority" provision contained in the same subsection, the homeowner association's lien is prior to even a first security interest, but only "to the extent of" charges for assessments "which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien." *Id.*

Confusion over how to interpret section 116.3116's apparent exception within an exception has spawned a wave of litigation in Nevada between purchasers of real property at homeowner association foreclosures and the holders of first position security interests recorded before those foreclosures.  Initially, whether the foreclosure of a homeowner association's super-priority interest extinguished a first security interest under Nevada Revised Statutes § 116.3116 remained an open question in Nevada, with courts issuing contradictory rulings on the question. *Compare SFR Investments Pool 1, LLC v. Wells Fargo Bank, N.A.*, No. 2:13-cv-01153-APG-PAL (D. Nev. July 25, 2013) (concluding that the HOA had established a likelihood of succeeding on the merits of its claim that foreclosure of the super priority portion of the HOA lien extinguished a first recorded Deed of Trust) *with Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, No. 2:13-cv-00164-RCJ-NJK, 2013 WL 2460452 (D. Nev. June 6, 2013) (granting summary judgment in favor of lender's assignee and holding that the foreclosure of an HOA lien did not extinguish the first mortgage).  On September 18, 2014, however, the Supreme Court of Nevada finally resolved the issue and found that a homeowner association's foreclosure of its super-priority lien extinguishes a first recorded security interest. *SFR Investments Pool 1 v. U.S. Bank*, 130 Nev. Adv. Op. 75, at *1 (2014).

### 2.  FHFA's conservatorship over Fannie Mae and Freddie Mac

In July of 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, *codified at* 12 U.S.C. § 4511 *et seq.*, which established FHFA for the purpose of regulating Fannie Mae, Freddie Mac, and the twelve

Federal Home Loan Banks.  In September of 2008, FHFA placed Fannie Mae and Freddie Mac into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs." 12 U.S.C. § 4617(a)(2).  As conservator, FHFA immediately succeeded to "all rights, titles, powers, and privileges" of Fannie Mae and Freddie Mac. 12 U.S.C. § 4617(b)(2)(A)(i).

In HERA, Congress granted FHFA numerous privileges and exemptions to carry out its statutory functions when acting as conservator of Fannie Mae and Freddie Mac.  Among these is a statutory "exemption" captioned "Property protection" providing that when acting as conservator, "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." 12 U.S.C. § 4617(j)(3).

**B. Factual Background**

Specifically at issue in this case is a dispute between the parties over their respective interests in certain real property located at 9050 West Warm Springs Road 2096, Las Vegas, NV, 89148 (the "Property").  On November 1, 2007, David and Jennifer Byron obtained a loan in the amount of $105,700 from CitiMortgage, Inc. ("CitiMortgage") that was secured by a Deed of Trust on the Property. (Deed of Trust, ECF No. 27-1).[1]  The Deed of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for CitiMortgage, as the beneficiary and First American Title Company as the trustee. (*Id.*).  At some point after the creation of the Deed of Trust and before this action, Clear Recon Corporation ("Clear Recon") was allegedly substituted as the trustee of the Deed of Trust. (Compl. ¶ 7, ECF No. 1-1).

On September 6, 2008, FHFA's Director placed Fannie Mae and Freddie Mac into conservatorships pursuant to HERA. *See* (Pollard Decl. ¶ 2, ECF No. 26-1).

---

[1] The Court takes judicial notice of Exhibits 1–4 (ECF No. 27-1) of Fannie Mae's Request for Judicial Notice. *See Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986).  Each of these documents is publicly recorded in the Clark County Recorder's office.

On November 18, 2011, MERS recorded an Assignment of Mortgage, assigning its interest in the Deed of Trust to CitiMortgage. (Assignment of Mortgage, Ex. 2 to ECF No. 27-1).  On March 7, 2014, CitiMortgage recorded a Corporate Assignment of Deed of Trust, assigning its interest in the Deed of Trust to Fannie Mae. (Corp. Assignment of Deed of Trust, Ex. 3 to ECF No. 27-1).

On September 26, 2014—six months after CitiMortgage assigned its interest in the Deed of Trust to Fannie Mae—Alessi & Koenig, LLC, as agent for the HOA, recorded a Trustee's Deed Upon Sale, stating that Skylights had purchased the Property for $28,500 at a foreclosure sale conducted by the HOA on September 17, 2014. (Trustee's Deed Upon Sale, Ex. 4 to ECF No. 27-1).  At no time during the process did FHFA, as conservator of Fannie Mae, consent to the HOA's foreclosure. *See* (Pollard Decl. ¶¶ 3–4, ECF No. 26-1).

**C. Procedural Background**

Skylights initiated this action by filing the original complaint in state court on December 5, 2014, asserting a claim for quiet title against Fannie Mae, Clear Recon, CCSF, CitiMortgage, and the Byrons. (Compl., ¶¶ 11–16, ECF No. 1-1).  Fannie Mae, Clear Recon, and CitiMortgage subsequently removed the action to this Court on January 8, 2015. (Not. of Removal, ECF No. 1).  On January 16, 2015, Fannie Mae and Clear Recon filed their Answers to the Complaint, asserting counterclaims against Skylights and the HOA. (Ans. to Compl. & Counterclaims, ECF Nos. 6, 8).

On January 23, 2015, this Court entered an Order granting a stipulation among the parties to add FHFA as an intervenor. (Intervenor Order, ECF No. 12).  Three days later, on January 26, 2015, FHFA filed its own Answer, which also asserted counterclaims against Skylights and the HOA. (FHFA Answer and Counterclaims, ECF No. 14).  Subsequently, on March 23, 2015, Fannie Mae and FHFA filed the pending Joint Motion for Summary Judgment.

On June 18, 2015, the Court held a hearing on the pending Motion for Summary Judgment, which was attended by the parties in this case as well as the parties in several related cases[2] pending before this Court involving the same issue concerning the application of 12 U.S.C. § 4617(j) to prevent the foreclosure of a homeowner association's super-priority lien. (Min. of Hearing, ECF No. 46).  After listening to the arguments presented by all parties present at the hearing, the Court took the motion under submission.

**II.**        **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

---

[2] These related cases are: *Elmer v. JP Morgan Chase Bank NA*, No. 2:14-cv-1999-GMN-NJK; *Williston Investment Group, LLC v. JP Morgan Chase Bank NA*, No. 2:14-cv-2038-GMN-PAL; and *Saticoy Bay, LLC Series 1702 Empire Mine v. Fannie Mae*, No. 2:14-cv-1975-KJD-NJK.

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.              DISCUSSION

In their Joint Motion for Summary Judgment, Fannie Mae and FHFA argue that under federal law, Skylights could not have extinguished Fannie Mae's lien on the Property secured by the Deed of Trust when it purchased the Property at the HOA foreclosure sale. (MSJ 3:3–4:5, ECF No. 26).  For the purposes of the motion, Fannie Mae and FHFA do not dispute that a homeowner association's foreclosure of its super-priority lien under the normal operation of Nevada Revised Statutes § 116.3116 would extinguish a prior first security interest. (*Id.* 6:3–8:4).  Instead, Fannie Mae and FHFA assert that section 4617(j)(3) of HERA barred the HOA from foreclosing on the Property without the consent of the conservator, FHFA. (*Id.*).  The Court agrees.

### A. The plain language of 12 U.S.C. § 4617(j) bars the foreclosure of a homeowner association's lien from extinguishing property of FHFA.

Section 4617 of HERA lays out the framework by which FHFA may act as conservator or receiver for one of the statute's regulated entities—such as Fannie Mae—and provides a list of powers and exemptions to aid FHFA in its task of reorganizing, rehabilitating or winding up the affairs of the regulated entities. *See generally* 12 U.S.C. § 4617.  Subsection (j), entitled "Other Agency exemptions" provides:

(1) Applicability
The provisions of this subsection *shall apply with respect to the Agency in any case in which the Agency is acting as a conservator* or a receiver.

(2) Taxation
The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State

law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed.

(3) Property protection
*No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency*, nor shall any involuntary lien attach to the property of the Agency.

(4) Penalties and fines
The Agency shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

12 U.S.C. § 4617(j) (emphasis added). "Agency" is defined earlier in HERA to mean "the Federal Housing Finance Agency established under section 4511 of this title." 12 U.S.C. § 4502(2).

12 U.S.C. § 4617(j) explicitly states that "in any case in which [FHFA] is acting as a conservator," "[n]o property of [FHFA] shall be subject to . . . foreclosure[] or sale without the consent of [FHFA]." 12 U.S.C. § 4617(j). The plain meaning of this subsection is that when FHFA is acting as a conservator, none of the property sought to be conserved by FHFA may be subject to a foreclosure without its consent. Therefore, a straightforward reading of the statutory language bars the HOA's foreclosure in this case from extinguishing the Deed of Trust without FHFA's consent, regardless of the HOA lien's super-priority under state law. *See Gonzales v. Raich*, 545 U.S. 1, 29 (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.").

Such a reading is further supported when 12 U.S.C. § 4617(j) is compared with 12 U.S.C. § 1825(b) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provides property protections to the Federal Deposit Insurance Corporation (the "FDIC") when it is acting as a receiver. Section 1825(b) contains virtually identical

language[3] to the corresponding provision in HERA at issue here.  Therefore, though no court appears to have yet directly addressed the application of the property protection provided to FHFA in HERA, other courts' interpretations of section 1825(b)(2) are persuasive for this Court's interpretation of section 4617(j)(3). *See In re Fed. Home Loan Mortgage Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009) *aff'd sub nom. Louisiana Mun. Police Employees Ret. Sys. v. FHFA*, 434 F. App'x 188 (4th Cir. 2011) ("[T]he Court is persuaded by decisions that have reached the same conclusion when interpreting [FIRREA], whose provisions regarding the powers of federal bank receivers and conservators are substantially identical to those of HERA."); *see also Higgins v. BAC Home Loans Servicing, LP*, No. 12-cv-183-KKC, 2014 WL 1332825, at *2 (E.D. Ky. Mar. 31, 2014) (relying in part on case law applying 12 U.S.C. § 1825(b) to analyze 12 U.S.C. § 4617(j)).

Of the several courts that have considered the corresponding property protection in 12 U.S.C. § 1825(b)(2), all have found that the plain language of that statute prevented property held by the FDIC as receiver from being extinguished by the foreclosure of superior liens without the FDIC's consent. *See, e.g., Simon v. Cebrick*, 53 F.3d 17, 22 (3d Cir. 1995) ("[W]e . . . affirm the district court's interpretation and application of the statute to protect the FDIC's mortgages from being extinguished without its consent through foreclosure of plaintiff's tax liens."); *Matagorda Cnty. v. Russell Law*, 19 F.3d 215, 222–23 (5th Cir. 1994) ("If the taxing units were allowed to foreclose their tax lien without the consent of the FDIC, the consensual mortgage lien . . . acquired by the FDIC as a result of the failure of Bay City Savings Bank

---

[3] 12 U.S.C. § 1825(b) provides:

Other exemptions

When acting as a receiver, the following provisions shall apply with respect to the Corporation:
…
(2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

would be extinguished.  This is clearly forbidden by the plain wording of § 1825(b)(2).");
*FDIC v. Lowery*, 12 F.3d 995, 996 (10th Cir. 1993) (affirming the district court's finding that
under "the plain language of 12 U.S.C. § 1825(b)(2) . . . the FDIC's non-consent prohibited the
defendants from disposing of the property.").  Accordingly, just as the plain language of section
1825(b)(2) bars the extinguishment of liens held by the FDIC in receivership without its
consent, the nearly identical language of section 4617(j) bars the extinguishment of liens held
by FHFA in conservatorship without its consent.

> **B. None of the arguments presented by Skylights or the HOA alter the Court's finding that 12 U.S.C. § 4617(j) applies to prevent the HOA's foreclosure from extinguishing the Deed of Trust.**

In their Responses in Opposition, Skylights and the HOA offer six arguments for their
position that 12 U.S.C. § 4617(j) does not apply to the HOA's foreclosure in this case.  All of
these arguments, however, are without merit.

First, the HOA argues that 12 U.S.C. § 4617(j) does not preempt Nevada Revised
Statutes § 116.3116, because section 4617(j) does not contain express preemption language.
(HOA Resp. 12:8–13:16, ECF No. 31).  Concordantly, the HOA argues that section 4617(j)
does not conflict with state law because FHFA may consent to the HOA's foreclosure. (*Id.*
13:17–25).  However, a federal law does not need to affirmatively state that it preempts
contrary state law so long as it "explicitly manifests Congress's intent to displace state law."
*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013); *see Cipollone v. Liggett
Grp., Inc.*, 505 U.S. 504, 516 (1992) ("Congress' intent may be 'explicitly stated in the statute's
language or implicitly contained in its structure and purpose.'") (quoting *Jones v. Rath Packing
Co.*, 430 U.S. 519, 525 (1977)).  Section 4617(j) unambiguously protects FHFA property from
taxation, adverse actions against its property, and the imposition of fines and penalties, all of
which could otherwise be imposed on FHFA's property under state law.  Accordingly,

Congress's creation of these protections clearly manifests its intent to displace state law. *See Bd. of Comm'rs of Montgomery Cnty., Ohio v. FHFA*, 758 F.3d 706, 709 (6th Cir. 2014) (affirming the district court's finding that in enacting section 4617(j)(2), "Congress intended to preempt state taxation"); *see also City of Spokane v. Fed. Nat. Mortgage Ass'n*, 775 F.3d 1113, 1117 (9th Cir. 2014) (finding that Fannie Mae and Freddie Mac's statutory charters exempting them from state taxation are constitutional and preempt state tax laws).

Second, the HOA argues that FHFA's application of 12 U.S.C. § 4617(j)(3) to bar homeowner association foreclosures is a deprivation of itstheir property rights without due process of law. (HOA Resp. 14:1–17:23, ECF No. 31).[4]   Under the Fifth Amendment, the federal government is prohibited from depriving a person of his or her property without due process of law. U.S. Const. amend. V.  "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Board of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  The HOA asserts that applying section 4617(j)(3) in this case would deprive it of its lien without procedural due process because the HOA was never granted notice or an opportunity to be heard. (HOA Resp. 14:1–17:23, ECF No. 31).  First, this argument somewhat misstates the effect of section 4617(j)(3).  The HOA's lien, which attached prior to FHFA's placing of Fannie Mae into conservatorship, is not extinguished by section 4617(j)(3) and does not lose its priority status, so the HOA is not deprived of its property interest.  However, section 4617(j)(3) does prevent the HOA from selling the Property at foreclosure free and clear of Fannie Mae's Deed of Trust, and "at some

---

[4] To the extent Skylights and the plaintiffs in the related cases—who all purchased real property at homeowner association foreclosure sales—argue that application of HERA deprives them of their property without due process, this argument is without merit.  Because the protections of 12 U.S.C. § 4617(j)(3) were already in effect at the time of sales, so long as Fannie Mae or Freddie Mac had obtained its interest and been placed into conservatorship before the foreclosure, the plaintiffs all purchased real property subject to FHFA's lienhold interest, and there was no deprivation of property.

point a delay in the ability to exercise property rights may constitute a compensable taking." *Cebrick*, 53 F.3d at 24 (finding that a delay in the enforcement of a tax lien against the FDIC caused by 12 U.S.C. § 1825(b)(2) at some point would rise to the level of a due process violation); *see also Matagorda Cnty.*, 19 F.3d at 225 ("Unmitigated delay, coupled with diminishment of distinct investment-backed expectations, *may, at some point*, infringe on the entire 'bundle' of rights enjoyed by the Appellants to the point that a compensable taking occurs."). Accordingly, the indefinite delay in the HOA's ability to foreclose on its super-priority interest and sell the Property free and clear of the Deed of Trust could potentially be a deprivation of property requiring procedural protections under the Due Process Clause of the Fifth Amendment.

Whether the delay in this case rose to that level, however, is not dispositive of the question because the deprivation of property rights effected by 12 U.S.C. § 4617(j)(3) occurred with due process of law. "Ordinarily, due process of law requires an opportunity for some kind of hearing prior to the deprivation of a significant property interest." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978)). "However when the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Id.* Here, the action which purportedly deprived the HOA of its property was the enactment of HERA, which was undertaken by Congress in the normal manner prescribed by law.[5] "[I]t is well established that the legislature can adjust the benefits

---

[5] The HOA frames its argument as if the deprivation of its property occurred when HERA's property exemption was applied against their foreclosure. *See* (HOA Resp. 14:26–15:2, ECF No. 31). However, the act that altered the HOA's property right was the enactment of HERA and FHFA's subsequent placement of Fannie Mae into conservatorship pursuant to that statute. The fact that the HOA was not aware of this change until Fannie Mae asserted its protection under the statute does not change the fact that the complained of action was the enactment of the statute itself. *Cf. Texaco v. Short*, 454 U.S. 516, 536 (1982) (rejecting the argument that "each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights").

and burdens of our economic lives as long as it does not behave in an arbitrary and irrational way." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 956 (9th Cir. 2005). Accordingly, "[w]hen a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due." *Illusions-Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 304–05 (5th Cir. 2007). Therefore, in enacting the general rule protecting all property held by FHFA as conservator from foreclosure, Congress satisfied the HOA's due process rights even if the HOA had no knowledge of the passage of the act or its effect on its property rights. *See Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 969 (9th Cir. 2003) ("[E]ven though an individual's property rights may be affected by the enactment of a general statute, 'where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.'") (quoting *Bi–Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)). Accordingly, the HOA's procedural due process challenge must fail.

Third, Skylights argues that section 4617(j)'s protections apply only to protect the "Agency," defined in the statute as FHFA, and do not protect any property of Fannie Mae from foreclosure. (Skylights Resp. 6:8–7:23, ECF No. 32). Therefore, because the property that was extinguished was the Deed of Trust held by Fannie Mae, the HOA did not need to obtain consent from FHFA for the foreclosure to extinguish the lower priority interest. (*Id.*). However, under the clear language of the statute, the protections of section 4617(j) apply in "any case in which [FHFA] is acting as a conservator or a receiver," and FHFA—as conservator to Fannie Mae—succeeds to "all the rights, titles, powers and privileges of [Fannie Mae] . . . with respect to [its] assets." 12 U.S.C. § 4617(b)(2)(A)(i). Accordingly, the property of Fannie Mae effectively becomes the property of FHFA once it assumes the role of conservator, and that property is protected by section 4617(j)'s exemptions. *See Nevada v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011) ("[W]hile

under the conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is."); *FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) ("FHFA, as conservator, stepped into the shoes of Fannie Mae and Freddie Mac.  Accordingly, contentions that fines and penalties assessed against Fannie Mae are not barred by section 4617(j)(4) because it only protects FHFA are 'meritless.'"); *see also In re Cnty. of Orange*, 262 F.3d 1014, 1019–20 (9th Cir. 2001) ("We also note that [section 1825](b)(2) provides 'nor shall any involuntary lien attach to the property of the Corporation.'  That language's plain meaning is that once the property belongs to the FDIC, that is, when the FDIC acts as receiver, no liens shall attach.") (emphasis omitted). Additionally, courts have consistently found in the context of similar federal laws that the term "property" includes both fee and lien interests in property. *See Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir. 1979) (finding under federal law that Fannie Mae's mortgage interest in real property should be treated just like any other property interest); *see also Simon*, 53 F.3d at 21 ("[T]he term 'property' in § 1825(b)(2) encompasses all forms of interest in property, including mortgages and other liens."); *Matagorda Cnty.*, 19 F.3d at 222 ("The FDIC's acquired lien interest in the Law lots is clearly a 'property' interest as contemplated in the statute."); *S/N-1 REO Ltd. Liab. Co. v. City of Fall River*, 81 F. Supp. 2d 142, 150 (D. Mass. 1999) ("A lien held by the FDIC as mortgagee is 'property' within the meaning of § 1825(b)(2).").  Accordingly, the "property" that is protected from foreclosure by section 4617(j)(3) includes lien interests held by Fannie Mae, such as the mortgage held on the Property in this case.

Fourth, Skylights argues that section 4617(j) protects FHFA property only from taxation and liens by state and local tax authorities and does not protect that property from foreclosures by a private entity like the HOA. (Skylights Resp. 7:24–12:13, ECF No. 32).  This argument relies heavily on the fact that most of the cases cited by Fannie Mae addressing section 1825(b) involved the FDIC seeking protection from a taxing authority and on the Fifth Circuit's opinion

in *FDIC v. McFarland* that is not binding on this court. (*Id.*)  In *McFarland*, the Fifth Circuit

found that the FDIC's protections in 12 U.S.C. § 1825(b)(2) "merely extend[] the general

exemption of the FDIC from taxation to the receivership context." *FDIC v. McFarland*, 243

F.3d 876, 886 (5th Cir. 2001).  However, the Fifth Circuit based its determination on the titling

and structure of section 1825, which is significantly different from the titling and structure of

section 4617.  When section 1825 was amended in 1989 to include subsection (b), the section

was titled "Exemption from taxation; limitations on borrowing" and was divided into four

subsections with subsection (a) titled "General rule" and subsection (b) titled "Other

exemptions." Financial Institutions Reform, Recovery, and Enforcement Act of 1989

("FIRREA"), Pub. L. No. 101–73, § 219, 103 Stat. 183 (1989) (codified as amended at 12

U.S.C. § 1825).[6]  The Fifth Circuit found that this titling and structure showed that subsection

(b) "was intended to address other exemptions from taxation than those stipulated in the

'general rule.'" *McFarland*, 243 F.3d at 886.  In contrast, 12 U.S.C. § 4617(j) is titled "Other

Agency exemptions" and its subsections include "(1) Applicability," "(2) Taxation," "(3)

Property protection," and "(4) Penalties and fines."  Such a structure indicates that section

4617(j) was intended to provide a list of protections for FHFA, which includes both exemption

from taxation as well as exemption from liens and foreclosures.  Accordingly, both the plain

language of subsection 4617(j)(3) and the structure of section 4617(j) lead this Court to the

---

[6] Curiously, the court in *McFarland* relied on the "Exemption from taxation" portion of the title of 12 U.S.C. § 1825 when it was amended in 1989 to support its conclusion that section 1825(b) applied only to taxing authorities but ignored the then-current title of that section.  In 1991, ten years before the Fifth Circuit's opinion in *McFarland*, Congress passed the Federal Deposit Insurance Corporation Improvement Act of 1991, which removed the words "from taxation" from the heading of section 1825(b). *See* Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. No. 102–242, § 161, 105 Stat. 2236 (1991).  Contrary to the holding reached in *McFarland*, the removal of the "from taxation" language from the heading implies that Congress intended the FDIC's protections to be broad and encompass more than taxation. *Cf. Monrad v. FDIC*, 62 F.3d 1169, 1175 (9th Cir. 1995) (finding in a case unrelated to taxation that "under a heading *formerly referring to 'Taxation' but later broadened by deletion*, § 1825(b)(3) states that FDIC 'shall not be liable for any amounts in the nature of penalties or fines'") (emphasis added).

conclusion that FHFA's exemption from foreclosures without its consent applies to private entities as well as state and local taxing authorities.

Moreover, while a large number of opinions discussing 12 U.S.C. § 1825(b)(2) involve the FDIC asserting its exemption from liens or foreclosures by a taxing authority, outside of the Fifth Circuit's opinion in *McFarland*, none of these opinions expressly limited the exemption to state and local taxing authorities. *See, e.g.*, *Cebrick*, 53 F.3d at 22 (applying section 1825(b)(2) to prevent an FDIC mortgage from being extinguished without its consent through the foreclosure of tax liens); *Cambridge Capital Corp. v. Halcon Enterprises, Inc.*, 842 F. Supp. 499, 502 (S.D. Fla. 1993) (same).  Furthermore, several courts have applied subsection 1825(b)(2) to protect the FDIC from entities other than taxing authorities. *See, e.g.*, *GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853, 856–57 (10th Cir. 1993) (finding that 12 U.S.C. § 1825(b)(2) barred a private entity from garnishing proceeds paid to the FDIC without its consent); *Trustees of MacIntosh Condo. Ass'n v. F.D.I.C.*, 908 F. Supp. 58, 65–66 (D. Mass. 1995) (finding that 12 U.S.C. § 1825(b)(2) barred a private condo association from foreclosing on its super-priority lien on a condo held by the FDIC as receiver); *Midlantic Nat. Bank/N. v. Federal Reserve Bank of New York*, 814 F. Supp. 1195, 1197 (S.D.N.Y. 1993) (finding that 12 U.S.C. § 1825(b)(2) barred a private entity from seeking relief pursuant to its money judgment from the FDIC); *see also Monrad v. FDIC*, 62 F.3d 1169, 1175 (9th Cir. 1995) (finding that 12 U.S.C. § 1825(b)(3) barred the district court's award of late payment penalties and attorney fees under state law for delays in providing severance pay to the employees of a bank put into receivership by the FDIC).

While those cases at least implicitly disagree with the Fifth Circuit's holding in *McFarland*, a few courts have also explicitly rejected the argument that section 1825(b) only prohibits the actions of state and local taxing authorities. *See, e.g.*, *Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261, 273 (E.D.N.Y. 2010) ("[T]he Court also finds that the plaintiffs'

arguments that Section 1825(b) applies only to the FDIC in its corporate capacity, and that Section 1825(b) applies only to tax liability, to be unconvincing."); *Alexander v. Washington Mut., Inc.*, No. CIV.A. 07-4426, 2011 WL 2559641, at *2 (E.D. Pa. June 28, 2011) ("[S]ection 1825(b)(3) . . . is intended to exempt FDIC–Receiver from liability for all penalties and not just those related to taxes.").  Accordingly, not only does the plain language and structure of section 4617(j) indicate that FHFA's property protection exempts it from foreclosure by private entities as well as taxing authorities, but the overwhelming number of decisions interpreting the FDIC's similar protections in section 1825(b) have also found that those protections apply to both private entities and taxing authorities.

Fifth, Skylights argues that a Servicing Guide Announcement by Fannie Mae instructing its servicers to pay homeowner association assessments to prevent foreclosures of super-priority liens under Nevada law created a requirement that Fannie Mae pay these assessments or be deemed to have consented to the foreclosure. (Skylights Resp. 12:14–13:20, ECF No. 32). Similarly, the HOA argues that by not actively protecting its interest, FHFA consented to the foreclosure. (HOA Resp. 19:25–21:4, ECF No. 31).  These arguments, however, invert section 4617(j)(3)'s requirement that a party attempting to foreclose on property of FHFA obtain its consent by placing the burden on FHFA to proactively protect its interest instead.  Skylights also implicitly argues that an instruction issued by Fannie Mae to its servicers somehow overrides the plain application of a federal law enacted by Congress.  However, such an inversion of obligations has no basis in the language of the statute, and an announcement by Fannie Mae to its servicers does not carry the force of law and cannot trump congressional legislation. *Cf. County. of Sonoma v. FHFA*, 710 F.3d 987, 993–94 (9th Cir. 2013) (finding that a directive not to buy certain assets is within the authority of the FHFA director but such directives are issued under FHFA's authority as a conservator not as rule-making decisions of a

regulator).  Accordingly, FHFA did not waive the protection of its property under section 4617(j)(3).

Finally, Skylights argues that there is a disputed material fact that precludes summary judgment because Fannie Mae and FHFA have failed to show that they acquired their interest in the Property before the Byrons defaulted on their assessments and the HOA recorded its Notice of Delinquent Assessment. (Skylights Resp. 13:22–15:2, ECF No. 32).  However, whether Fannie Mae acquired its interest prior to the recording of the Notice of Delinquent Assessment is not a material fact in this case.  Based upon the recorded documents, it is undisputed that the Deed of Trust was assigned to Fannie Mae several months before the HOA conducted its foreclosure sale. *Compare* (Corp. Assignment of Deed of Trust, Ex. 3 to ECF No. 27-1) (assigning the beneficiary interest under the Deed of Trust to Fannie Mae on March 7, 2014) *with* (Trustee's Deed Upon Sale, Ex. 4 to ECF No. 27-1) (stating that Skylights purchased the property at a foreclosure sale on September 17, 2014).  The plain language of 12 U.S.C. § 4617(j)(3) prohibits property of FHFA from being subject to a foreclosure without its consent.  Accordingly, because FHFA held Deed of Trust as conservator for Fannie Mae prior to the foreclosure, section 4617(j)(3) prevents the HOA's foreclosure on the Property from extinguishing the Deed of Trust.

**C.  The other arguments against the application 12 U.S.C. § 4617(j) to prevent a homeowner association foreclosure from extinguishing FHFA property without its consent also fail.**

In addition to the arguments raised by Skylights and the HOA in their briefs, three additional arguments against applying 12 U.S.C. § 4617(j) to bar foreclosures of homeowner associations on property held by FHFA as conservator were raised at both the June 18, 2015 hearing and in the briefs of the plaintiffs in the related cases.  All of these arguments are also unavailing.

The first argument is that even if section 4617(j)'s protections would apply to protect Fannie Mae's Deed of Trust from foreclosure from a private entity, that protection applies only when FHFA is acting as a receiver, and not when it is acting as a conservator, as is the case here.  This argument is premised on an unsupported assertion that "while it might make sense to treat the property of an entity as if it was property of a receiver when the receiver is assigned the task of liquidating the entity, it makes no sense to treat the property of an entity that is not being liquidated as if the property was property of a conservator." (Saticoy Bay Resp. 12:18–14:16, Case No. 2:14-cv-1975, ECF No. 32).  However, section 4617(j) expressly states that "the provisions of this subsection shall apply with respect to the Agency in any case in which the Agency is acting as a *conservator or a receiver*." 12 U.S.C. § 4617(j)(1) (emphasis added). Furthermore, there is no justification for the position that it does not make sense to provide protections against the extinguishment of property held by a conservator when one of the duties of FHFA as conservator under HERA is to "preserve and conserve the assets and property of the regulated entity." 12 U.S.C. § 4617(b)(2)(B)(iv).  Such a contention that the statute's protection of property when held by a conservator "makes no sense" ignores the plain language and expressed purpose of statute, and must be rejected. *Cf. 1185 Ave. of Americas Assocs. v. RTC*, 22 F.3d 494, 497 (2d Cir. 1994) ("Congress did not use the phrase 'conservator *or* receiver' loosely.") (emphasis added).

The second argument is that FHFA goes beyond its statutory powers by using section 4617(j)(3).  The plaintiffs contend that FHFA's invocation of 4617(j)(3) is premised on its power to "[t]ake such action as may be . . . appropriate to . . . preserve and conserve the assets and property of [Fannie Mae]." 12 U.S.C. § 4617(b)(2)(D)(ii).  Moreover, the plaintiffs assert that, to be appropriate, FHFA's actions cannot be inconsistent with the Director's principal duties, one of which "[s]hall be . . . to ensure that . . . [Fannie Mae] complies with . . . guidelines . . . issued under this chapter and the authorizing statutes." 12 U.S.C. §

4513(a)(1)(B)(iii).  Notably, the plaintiffs contend that FHFA's lack of consent was not an appropriate action because it did not comport with directives from FHFA's director that required servicers to pay association assessments in light of the *SFR* decision to avoid any risks of extinguishment.  However, while the directives encouraged servicers to pay association assessments to avoid potential risks in light of the *SFR* decision, the directives are not binding law prohibiting FHFA from refusing to give consent for HOA foreclosure sales under section 4617(j)(3). *See County of Sonoma*, 710 F.3d at 993–94 (finding that a directive not to buy certain assets is within the authority of the FHFA director but such directives are issued under FHFA's authority as a conservator not as rule-making decisions of a regulator).  Furthermore, the Court finds that section 4617(j)(3) comports with the statutory power of FHFA to "preserve and conserve the assets and property of [Fannie Mae]." 12 U.S.C. § 4617(b)(2)(D)(ii).

The third argument is that the liens held by the homeowner associations attached before the FHFA's conservatorship and thus, preclude the application of section 4617(j)(3).  This argument is premised on the contention that, if a lien attached before FHFA's conservatorship, then FHFA cannot avoid that lien.  However, while section 4617(j)(3) does not extinguish liens that attached to property prior to FHFA's conservatorship, such liens do not exempt lien-holders from the FHFA consent requirement. *See Lowery*, 12 F.3d at 996–97 (holding that while section 1825(b)(2) does not extinguish an earlier lien or excuse the payment of a tax by the FDIC, it does deny the ability to use a lien on FDIC property as a vehicle for collection of delinquent tax).  Thus, while the HOA liens may still attach to property after FHFA's conservatorship, such liens are still subject to section 4617(j)(3)'s requirement of FHFA consent before FHFA's property is subject to their foreclosure.

Under the plain language of 12 U.S.C. § 4617(j)(3), the HOA's foreclosure on the Property could not have extinguished the Deed of Trust without FHFA's consent.  Having rejected all of the arguments for not applying the property protection of 12 U.S.C. § 4617(j)(3)

to this case, the Court finds that the HOA's foreclosure on the Property did not extinguish the junior Deed of Trust held by Fannie Mae.  Accordingly, Fannie Mae, Clear Recon, FHFA, CCSF, CitiMortgage, and the Byrons are entitled to summary judgment on Skylights's quiet title claims against them.

**IV.**          <u>**CONCLUSION**</u>

      **IT IS HEREBY ORDERED** that Fannie Mae and FHFA's Motion for Summary Judgment (ECF No. 26) is **GRANTED**.  The Court finds that 12 U.S.C. § 4617(j)(3) preempts Nevada Revised Statutes § 116.3116 to the extent that a homeowner association's foreclosure of its super-priority lien cannot extinguish a property interest of Fannie Mae or Freddie Mac while those entities are under FHFA's conservatorship.  Accordingly, the HOA's foreclosure sale of its super-priority interest on the Property did not extinguish Fannie Mae's interest in the Property secured by the Deed of Trust or convey the Property free and to Skylights.

      **IT IS FURTHER ORDERED** that Fannie Mae, Clear Recon, FHFA, CCSF, CitiMortgage, and the Byrons are granted summary judgment on Skylights's claims for quiet title.

      The Clerk of the Court shall enter judgment accordingly.

      **DATED** this ___24___ day of June, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge